**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 06-01992 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**EPA'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

On November 16, 2006, Plaintiffs Rocky Mountain Clean Air Action and Jeremy Nichols filed this action pursuant to section 304(a)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(2), alleging that Defendant, Stephen L. Johnson, Administrator of the United States Environmental Protection Agency ("EPA") failed to perform a duty mandated by CAA section 505(b)(2), 42 § U.S.C. § 7661d, to grant or deny, within 60 days, petitions submitted by Plaintiffs requesting that EPA object to CAA permits issued by the appropriate state agencies to the Public Service Company's Fort Saint Vrain Power Station ("Ft. St. Vrain Station") and the GCC Dacotah cement plant ("GCC Dacotah"). The claim regarding Ft. St. Vrain was mooted on February 5, 2007, when EPA took final action on the request for an objection. The GCC Dacotah claim was resolved through a consent decree entered on May 17, 2007, that, in relevant part, required EPA to take final action on the request for objection by June 15, 2007. EPA timely met this obligation. The only remaining issue for the Court to resolve is the amount of

attorneys' fees to be awarded to plaintiff consistent with the CAA and the relevant case law.[1]

Plaintiff has requested an award of $9,229.78 in attorneys' fees.[2] While this amount is not large, it is excessive because it bases the calculation of fees for counsel located in Berea, Kentucky, on District of Columbia rates.[3] Under the principles established by the D.C. Circuit in *Davis County Solid Waste Management v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999), a fee award should be based on market rates for counsel in the Eastern District of Kentucky, within which Berea is located, rather than District of Columbia to avoid a windfall.

## BACKGROUND

CAA section 304(d), 42 U.S.C. § 7604(d) provides that "[t]he court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." In *Pennsylvania v. Delaware Valley Citizen's*

---

[1] In a stipulation filed with the Court on July 5, 2007, EPA agreed that Plaintiff is entitled to recover attorneys' fees. The stipulation also established that costs of litigation should be awarded in the amount of $388.28.

[2] Because this same counsel has filed numerous similar claims against EPA, *see infra* at 12, the value to the public fisc of resolving the appropriate rate goes beyond the amount at issue here.

[3] Plaintiffs contend that this Court has already established that their counsel is entitled to recover fees based on D.C. rates. Mem. at 25 (citing *Center for Biological Diversity v. Norton*, Slip op., Case No. 04-0156-JDB (D.D.C. Jan. 26, 2005). The opinion, however, clearly states that both parties relied on the *Laffey* Matrix. *Id*. at 5 n.4. Accordingly, the Court did not have to decide whether the use of *Laffey* rates was appropriate.

Plaintiffs also contend that the United States has paid *Laffey* rates to settle claims based on services by this same counsel. The settlements in question identify only the lump sum to be paid and do not address the hourly rate on which that sum was based. Putting aside the United States' understanding that settlement negotiations are confidential, and the generally-accepted inadmissability of evidence regarding negotiations under Fed. R. Evid. 408, the fact that these settlements were entered does not effect the waiver of any factual or legal argument in other cases. Settlements have no probative force, however.

*Council for Clean Air*, 483 U.S. 711, 714 (1987) ("*Delaware Valley II*"), the Court recognized that the size of an award under this provision is to be determined by the district courts in the exercise of their equitable discretion. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.'").

The Court has also explained that Congress' goal in enacting section 304(d) was the same as the goal of 28 U.S.C. § 1988, which authorizes fee awards in civil rights cases: to promote citizen enforcement of important federal policies. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 559 (1986) ("*Delaware Valley I*"). The Court cautioned, however, that

> [t]hese statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws. If plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable' fee, the purpose behind the fee-shifting statute has been satisfied.

*Id*. at 565 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

In *Blum*, the Court determined that fees should be based on the "prevailing market rates in the relevant community." 465 U.S. at 895. The Court has adopted this same standard to determine rates in CAA cases. *Delaware Valley I*, 478 U.S. at 559. The Supreme Court, however, has not defined "the relevant community." *See Davis County*, 169 F.3d at 757-58 (noting that § 7607(f) of the Clean Air Act does not specify whether to use "the situs of the law firm or the situs of the legal proceeding" to set hourly rates). In most cases, federal courts typically set attorney fee awards according to the market rates in the litigation forum, a practice informally known as the "forum rule." *Donnell v. United States*, 682 F.2d 240, 251–52 (D.C.

Cir. 1982).[4]

In *Davis County*, the D.C. Circuit recognized an exception to the forum rule, applicable where "the bulk of the work is done outside the jurisdiction of the court *and* where there is a *very significant* difference in compensation favoring D.C." 169 F.3d at 758 (emphasis in original). The court determined that the forum rule produces just awards for most attorneys, "except those few who practice in far less expensive legal markets and perform the bulk of their work on the case at home in those markets." *Id.* at 759. Thus, the presumption in favor of awarding forum rates does not apply when "the work done [in the forum] is minimal and the difference in rates is substantial." *Id.*

The court concluded that this exception to the forum rule would avoid windfalls, while still ensuring that the plaintiffs would be able to find appropriate counsel. *Id*. at 760. The court ruled that petitioner would not be awarded fees based on D.C. rates for Utah counsel, whose market billing rates were substantially lower, where the work was largely performed in Utah. *See also Palmer v. Rice*, 2005 WL 1662130, at *20 (D.D.C. July 11, 2005) (Massachusetts counsel would be limited to home forum billing rate of $140, rather than claimed D.C. rate of $370, where most of her time on case was spent in Massachusetts).[5]

---

[4]     *Donnell* recognized two widely-recognized exceptions to the forum rule, however, courts may award attorney fees set according to a lawyer's "home town" rates rather than the forum's rates: (1) where a party demonstrates a need for an out-of-town attorney's special expertise, or (2) where a party shows that local counsel were unwilling to take the case. *Id.* at 252. These exceptions depend on a "compelling" showing as to why the services performed by the out-of-town attorney were "unavailable within the court's jurisdiction." *Id*. Thus, the *Donnell* assumptions addressed the circumstances where payment at forum rates is necessary to ensure the availability of adequate counsel. Plaintiffs do not suggest that there is a shortage of attorneys in D.C. that could have taken this case.

[5]     The Court of Federal Claims has also adopted the rule of *Davis County*:

Finally, judicial review of any fee claim against the government must be consistent with the principles summarized in *American Petroleum Institute v. EPA*, 72 F.3d 907 (D.C. Cir. 1996). "[I]in evaluating the reasonableness of all the elements of billing, items of expense or fees that may not be 'unreasonable between a first class law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient to allow us justly to tax the same against the United States.'"). *Id.* at 912 (internal citations omitted). Thus, the Court must carefully scrutinize such claims for reasonableness.

## ARGUMENT

**I.     PLAINTIFF HAS FAILED TO SHOW THAT D.C. RATES SHOULD APPLY**

**A.     Plaintiffs Have Not Met Their Burden To Show That the *Davis County* Exception Is Not Applicable**.

Plaintiffs claim that they are entitled to recover fees based on District of Columbia market rates as set forth in the *Laffey* Matrix.[6] For Mr. Ukeiley, the rates claimed are $360 per hour for time prior to June 1, 2006, and $375 per hour for time after that date. Plaintiffs also seek $205 per hour for the services of Aubrey Baldwin, a first-year associate, and $120 per hour

---

> The applicable market rate is the community where the attorney maintains an office and practices law. As the Court emphasized during oral argument, a Cheyenne, Wyoming attorney would receive a significant windfall if compensated at Washington, D.C. hourly rates. In Cheyenne, a practicing lawyer does not have anywhere near the operational costs, such as office space, clerical support, and associate lawyers, as in Washington, D.C. The Court cannot justify the payment of $574 to $598 per hour to a Cheyenne lawyer who normally charges $200 per hour.

*Avera v. Secretary of HHS,* 75 Fed. Cl. 400, 405 (Fed. Cl. 2007).

[6]     The *Laffey* Matrix is a schedule of rates originally derived by this Court and then updated by the United States Attorney for the District of Columbia. The Matrix has been accepted as evidence of D.C. market rates. *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995).

for time spent by a law clerk. Plaintiffs bear the burden of showing that these rates are appropriate and consistent with *Davis County*. *See Hensley v. Eckerhart*, 461 U.S. at 437 ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *In re North (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995) (petitioners bear the burden of demonstrating the reasonableness of each element of their fee request); *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F. Supp. 2d 93, 95 (D.D.C. 2005) ("While the [c]ourt is empowered to exercise its discretion in determining the fee amount, the plaintiff still bears the burden of establishing all elements of the requested fee award, including entitlement to an award, documentation of appropriate hours, and justifications of the reasonableness of the billing.") (citation omitted).

Thus, under *Davis*, in order to establish entitlement to District of Columbia rates, Plaintiffs should have introduced evidence to show that the rates in the Eastern District of Kentucky are not substantially lower than District of Columbia rates.[7] Plaintiffs made no effort to meet this burden, despite the fact that there is clear evidence that the prevailing rates in counsel's home forum are substantially lower.

> B. **The District Court in Counsel's Home Forum Has Established That Market Rates There Are Very Substantially Lower than In D.C.**

The most convincing indicator of the appropriate market rates for counsel located in Berea, Kentucky, are recent decisions from the United States District Court for the Eastern District of Kentucky. In a voting rights case in Ashland, Kentucky, the court found that $175 per hour was a reasonable rate for an attorney with more than 26 years of experience who had

---

[7] Plaintiffs concede that no work related to the case was performed in the District of Columbia, thereby obviating the need to analyze that prong of the *Davis* exception.

"extraordinary experience" in campaign finance law. *Anderson v. Wilson*, 357 F. Supp. 2d 991, 998 (E.D. Ky. 2005) (Ashland Division). For an attorney with 16 years of experience but "no particular expertise relevant to [the] case," the court refused the request for $175, and allowed only $150 per hour. Attorneys with 15 years experience were given this same rate. For associates with eight to ten years experience, the court awarded $125 per hour and for associates with four to five years of experience, the rate was set at $110 per hour.

An opinion issued by the Lexington Division states: "The Court is aware that hourly rates for litigators in the local market range from less than $100 to more than $250 per hour." *Dixie Fuel Co. v. Callahan*, 136 F. Supp. 2d 659, 666 (E.D. Ky. 2001) (FOIA case). The court concluded that $125 was a reasonable rate for the particular attorney, but did not set forth his qualifications. In *McCoy v. Federal Bureau of Prisons*, 2005 WL 1,972,600 (E.D. Ky. Aug. 16, 2005) (Lexington Division), the court found that, based on its familiarity with the local market, $200 is a reasonable hourly rate for counsel and $75 per hour is reasonable for a paralegal. In *Bryant v. Nighbert*, the court found that $195-$225 was reasonable for partners working on civil rights litigation. A partner with 15 years experience was allowed to charge $195 and an associate with seven years experience was limited to $150 per hour. 2005 WL 2234636 (E.D. Ky. Sept. 14, 2005) (Lexington Division).[8]

### C.    Plaintiffs Would Receive A Windfall If D.C. Rates Are Used.

Although Plaintiffs have failed to document the market rates in Kenbtucky, based on the

---

[8]    Plaintiffs suggest that a rate survey from the National Law Journal supports his rate by showing that "$375 rate for Ukeiley is within the range of rates charges by partners in and around Kentucky." Memo at 23 n.10; Decl. ¶ 56. In fact, this survey, which is based on the 100 largest firms in the country does not include any firms from Kentucky. The survey does show that the rate claimed by Mr. Ukeiley would place him among the most expensive partners among the largest firms in cities such as Nashville, Cincinnati, and Toledo.

case law discussed above, a reasonable rate for an attorney of Mr. Ukeiley's experience would be no more than $200 per hour; $160 less than he seeks for time prior to June 1, 2006, and $175 less than he claims for time incurred after that date. For his associate, Ms. Baldwin, an appropriate rate would be $100 per hour, $105 less than claimed. Finally, for Ms. Middleton, the law clerk, the reasonable rate should be $75, a reduction of $45 from the claimed rate of $120.[9]

Even assuming that the number of hours claimed by plaintiffs is reasonable, recalculating the claim using the appropriate rates shows that the use of D.C. rates produces a fee that is almost twice that of a fee calculated under Kentucky rates. Thus, the use of D.C. rates will result in a substantial windfall to plaintiffs, which is the outcome *Davis* intended to avoid.

|           | Hours | D.C. Rates | Ky. Rates |
|-----------|-------|------------|-----------|
| Ukeiley   | 11.4  | $4,254     | $2,280    |
| Baldwin   | 19.1  | $3,915.50  | $1,910    |
| Middleton | 4.3[10] | $ 516    | $ 322.50  |
| Totals    |       | $8,745.5   | $4,512.50 |

Plaintiffs assert that *Davis*' concern that regarding the possibility of a windfall applies only where the windfall would benefit the client, not the attorney. Memo at 13 & n.3. In *Davis*, petitioner had a fee agreement with counsel and presumably petitioner would have kept the

---

[9] EPA is not required to prove that any specific rate is appropriate. The defendant is not required to submit any evidence regarding rates unless the plaintiff has submitted sufficient evidence to meet its burden of proof. *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982). Where Plaintiffs have failed to meet their burden of proof, the appropriate remedy would be to deny the fee claim outright. EPA, however, is willing to accept these rates drawn from Kentucky cases as the basis for an award, even without further evidence from Plaintiffs, if the Court deems such an award to be appropriate.

[10] Although Plaintiffs' claim includes 5.6 hours of law clerk time, only one entry of 4.3 hours on July 8, 2007, was located on review of the time sheets.

8

difference between the fees due under the agreement and any award by the court. 169 F.3d at 758. According to Plaintiffs, they cannot benefit from any windfall because they have no agreement to pay counsel. The plain language of the CAA, however, demonstrates that the right to seek attorneys' fees, and any resulting award, belong to Plaintiffs, not to counsel. Thus, the particular terms regarding distribution of an award are always between client and counsel. Accordingly, Plaintiffs' suggestion that the applicability of *Davis* depends on whether the windfall goes to the client or the counsel cannot be sustained. In any event, the courts have also been most emphatic in holding that fee-shifting statutes are not intended to provide financial advantage to counsel. *See Delaware Valley I*, 478 U.S. at 559 ("[t]hese statutes were not designed as a form of economic relief to improve the financial lot of attorneys."); *Hensley v. Eckerhart*, 461 U.S. at 430 n.4 (fee-shifting statutes were not intended to "produce windfalls to attorneys").

      **D.**    **That Certain Clients May Have Paid Counsel Laffey Rates Does Not Establish That Such Rates Can Be Reasonably Charged to the Government in this Case.**

The courts will not award a fee based on an attorney's billing rate unless that rate is reasonable and consistent with the market rate in the relevant community. *See Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993). The D.C. Circuit has held that "the actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate." *National Ass'n of Concerned Veterans*, 675 F.2d at 1326. *See Sierra Club v. EPA*, 769 F.2d 796, 808 (D.C. Cir. 1985) ("where firm receiving fees is a for-profit partnership with a long history of billings to private customers, the reasonable hourly rate is the firm's historical billing rate"). This is not the same, however, as saying that the highest rate that counsel can charge should be treated as the appropriate market rate. The market

rate does not reflect "what the client paid in a single fortunate case, but what on average counsel has in fact received." *National Ass'n of Concerned Veterans*, 675 F.2d at 1326.

Plaintiffs argue that the Court should accept *Laffey* Matrix rates because those are the rates Mr. Ukeiley charges to private clients. Mr. Ukeiley states that he has billed $66,000 using *Laffey* rates to labor unions and individual union members to participate in fourteen matters related to Clean Air Act permits issued by the Indiana Department of Environmental Management between December 2003 and June 2007. Ukeiley Decl. ¶ 25. Assuming that Mr. Ukeiley means $360 per hour when referring to *Laffey* rates, he worked 183 hours (approximately 4.5 weeks) over a period of about 42 months at this rate to earn the $66,000.[11] Thus, payment by these clients at this rate reflects "the fortunate case" warned of in *Concerned Veterans*, rather than a meaningful average rate that counsel has charged to paying customers over time.[12]

    **C.**    **Plaintiffs' Claim That Their Counsel Is Entitled To *Laffey* Rates Because He Practices Mostly In D.C. Is Without Legal Support.**

Mr. Ukeiley states that he lives in Kentucky for personal reasons,[13] Decl. ¶ 27, but has a

---

[11] These numbers could change somewhat, depending on how much time was billed on these matters by an associate charging lower rates.

[12] Plaintiffs state that Mr. Ukeiley works at a reduced rate of $90 for environmental clients unable to pay market rates. Memo at 19. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988), established that "the prevailing market rate method heretofore used in awarding fees to traditional for-profit firms and public interest legal services organizations shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." While this case supports the claim that Plaintiffs are not limited to the reduced rate, it does not address the primary question at issue here: which forum is the relevant market.

[13] The reasons counsel decide where to live have nothing to do with whether the rate claimed is reasonable. Regardless of why Mr. Ukeily has chosen to open his office in Kentucky, that is where his business is located and so must be regarded as his home forum for the purpose of analyzing the appropriate rate under *Davis County*. Moreover, by locating in Kentucky, Mr.

"national practice" in which most of his cases are filed in this Court.[14/] *Id.* ¶ 26. Plaintiffs cite no cases that recognize the concept of a "national practice" as rendering the forum rule in *Davis* irrelevant. Nor does Plaintiff cite any cases that support the suggestion that a national rate would be equal to the *Laffey* Matrix, which is explicitly designed to represent the D.C. market rates. If Plaintiffs believe that the national nature of Mr. Ukeily's practice makes the forum rules inapplicable, they should have introduced some evidence to establish what national rates would be.

Plaintiffs' argument can be construed as the assertion that, because Mr. Ukeiley has a national practice, the appropriate rate is that applicable for the forum where the suit is filed. If the choice of forum determines the rate to be paid for counsel, Plaintiffs can significantly increase the amount of attorneys' fees that can be recovered by filing in a high-cost market, such as the District of Columbia. The Title V cases recently filed by Mr. Ukeiley on behalf of several different clients demonstrate how such a rule could produce inequitable results.

| Case Name | Site of subject of suit |
| --- | --- |
| Sierra Club v. Johnson 07-00414 | Maysville, Kentucky |
| Idaho Conservation League v. Johnson, 07-11396 | Lewiston, Idaho |
| MacClarence v. Johnson, 07-00055 | Prudhoe Bay, Alaska |

---

Ukeiley has been to take advantage of lower costs for office space, personnel, and other necessary elements for a law practice. *See Avera v. Secretary of HHS*, 75 Fed. Cl. at 405 (Wyoming attorney has lower operating costs than counsel in D.C.)

[14/]    Mr. Ukeiley describes himself as "one of the most experienced Title V litigators on the public interest side in the country." He does not, however, explain why any particular expertise is necessary for a deadline suit.

| | |
|---|---|
| Rocky Mountain Clean Air Action v. Johnson, 06-01419 | Denver, Colorado, and South Dakota |
| Center for Biological Diversity v. Johnson, 06-1350 | Kentucky |
| Sierra Club v. Johnson, 05-00750 | Franklin, Georgia |
| Sierra Club v. Johnson, 05-02177 | several Georgia locations |
| Nichols v. Johnson, 05-02215 | Denver |

Although D.C. is a legal venue for each of these cases, none involve facilities in this forum; in fact, two facilities are located in Kentucky. Plaintiffs' theory regarding a national rate would produce the result that counsel's rates can be increased significantly by their choice of forum. This is a basic inequity that would inflate the amount to be paid by the federal taxpayers, while providing a windfall to Plaintiffs and counsel.

The unreasonable nature of this proposal is demonstrated by the lack of any evidence that these clients would have chosen to file in the District of Columbia, rather than the venue where the plant is located, if the client (rather than the government) would actually have had to pay the fee. As explained by the Second Circuit, "We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2007 WL 2,004,106, *8 (2d Cir. July 12, 2007) (Federal Reporter citation not yet available) (upholding district court's refusal to allow out-of-town attorneys to charge higher rates). There is no evidence that suggests any of the groups identified above would have chosen to file in the District of Columbia, rather than their local federal district court, if they had to pay substantially higher fees as a consequence. Accordingly, there is no reason that the government should have to pay higher fees based on choice of forum.

**II.     THE HOURS CLAIMED SHOULD BE REDUCED**

The total amount of hours Plaintiffs claim is fairly small. Nonetheless, a further reduction of 10% from each attorney is appropriate to reflect the fact that the documents in this case (the complaint, the consent decree, and the fee petition) were largely replicated from filings in the other Title V cases cited above and the fee petition in *Center for Biological Diversity v. Norton*, Case No. 04-0156-JDB. The government should not have to pay repeatedly for the same work.

**III.    SUMMARY**

Plaintiffs should be awarded $3,760 in fees, in addition to $388.28, in costs, and $322.50 for law clerk time.

|         | Adjusted Hours | Adjusted Rate | Total   |
|---------|----------------|---------------|---------|
| Ukeiley | 10.2           | $200          | $2,040  |
| Baldwin | 17.2           | $100          | $1,720  |
|         |                |               | $3,760  |

## CONCLUSION

For these reasons, Plaintiffs should recover no more than $4,470.78 in costs of litigation, including attorneys' fees, pursuant to section 304(d) of the CAA, 42 U.S.C. § 7604(d).

                RONALD J. TENPAS
                Acting Assistant Attorney General
                Environment & Natural Resources Division

                /s/ EILEEN T. MCDONOUGH
                United States Department of Justice
                Environmental Defense Section
                P.O. Box 23986
                Washington, D.C. 20026-3986
                Phone (202) 514-3126
                Fax (202) 514-8865
                eileen.mcdonough@usdoj.gov

July 27, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-01992 |
| STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency | ) ) ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Upon consideration of the motion for attorneys' fees and the opposition thereto, it is hereby ordered that the motion is denied.

SO ORDERED on this ___ day of _____, 2007.

_____
JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE