IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, <u>et al</u>., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 06-01992 (JR) |
| STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

<u>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AWARD OF**</u>

<u>**ATTORNEYS' FEES AND COSTS**</u>

## I.     INTRODUCTION

With regard to Plaintiffs' motion to recover attorneys' fees and costs under the Clean Air Act citizen suit provision, the central issue left for the Court to decide is the reasonable hourly rate for Plaintiffs' attorneys.  Plaintiffs request a rate based on Plaintiffs' attorneys' actual market rate as evidenced by what Plaintiffs' attorneys actually charge and are paid in their non-*pro bono* cases.  Plaintiffs' requested rates are also substantially below the actual market rates for federal court practice in the District of Columbia but are the rates that the United States Department of Justice itself puts forth on its website, known as the U.S. Attorneys' Office Laffey Matrix rate, as reasonable rates for federal court practice in the District of Columbia.

On the other hand, Defendant argues that Plaintiffs' attorneys should be paid at a rate that is a mere fraction of their actual rate and the U.S. Attorneys' Office Laffey Matrix rate. Defendant's approach effectively penalizes Plaintiffs' attorneys for taking this public interest case, involving protecting the public from dangerous air pollution, on a *pro bono* basis. Defendant argues that the Court should reject the well-established "forum rate" rule and base Plaintiffs' attorneys' rates on the Eastern District of Kentucky. In making this argument, Defendant does not even attempt to directly address the issue that Plaintiffs' attorneys "home forum" is not the Eastern District of Kentucky because Plaintiffs' attorneys have never filed a single case in that forum. The Court should decline Defendant's invitation to become the first court to penalize *pro bono* public interest counsel representing a party on a *pro bono* basis by setting a rate that is substantially below counsel's actual rates charged to non-*pro bono* clients.

## II.    ARGUMENT

### A.    DEFENDANT HAS FAILED TO SHOW WHY PLAINTIFFS' COUNSEL SHOULD NOT RECOVER FEES AT THEIR ACTUAL RATES, WHICH ARE ALSO THE DOJ LAFFEY MATRIX RATES.

#### 1.    THE DAVIS EXCEPTION TO THE FORUM RATE RULE DOES NOT APPLY TO THIS CASE.

Plaintiffs will provide below a detailed reply to EPA's Opposition to Motion for Attorney's Fees (EPA Opp.) in the interest of completeness and to show the absurdity of EPA's position. However, ultimately, the Court's analysis need not trouble with EPA's inaccurate details for they are relevant.

The relevant argument is this. EPA invokes <u>Davis County Solid Waste Mgmt. v. EPA</u>, 169 F.3d 755, 758 (D.C. Cir. 1999) to claim an exception to the otherwise well established rule that "forum rates" are to be applied. The D.C. Circuit held in Davis that the exception to the forum rates rule was to "prevent the occasional erratic result where the successful petitioner is vastly overcompensated given the amount he <u>contracted to pay</u> for legal services. In <u>all</u> other cases the D.C. forum rates would apply." <u>Id.</u> (emphasis added). It is undisputed Plaintiffs' counsel are representing Plaintiffs on a *pro bono* basis in this case; that is that Plaintiffs have not contracted to pay anything for legal services except out of pocket expenses. 7/13/07 Declaration of Robert Ukeiley in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Costs (1st Ukeiley Decl.), ¶ 36. Thus, because it is impossible for Plaintiffs to be vastly overcompensated given the amount Plaintiffs contracted to pay for legal services in this case, the Davis exception does not apply. It is also undisputed that the hourly rates Plaintiffs are requesting are reasonable D.C. forum rates. Therefore, Plaintiffs' motion should be granted based on their requested rates.

### 2. THE REST OF EPA'S ARGUMENTS ARE WITHOUT MERIT

EPA starts off by arguing that they are litigating this motion to protect the public fisc. EPA Opp. at 2, n. 2. It is difficult to reconcile this claim with EPA's wasteful practice of violating the mandatory 60-day deadline in Title V of the Clean Air Act almost every single time until hauled into court. <u>See</u> 1st Ukeiley Decl. ¶¶ 18-19. This practice results in EPA spending tax payer money on not only Plaintiffs' costs of

litigation, including attorneys fees, but also on EPA and Department of Justice personnel defending, that is settling, these frivolous suits.

The Clean Air Act requires that would be plaintiffs send EPA a notice of intent to sue letter 60 days before filing suit. 42 U.S.C. § 7604(b)(2). The purpose of this requirement to give notice of intent to sue is to allow the violator, in this case EPA, to come into compliance with the law and thus "render unnecessary a citizens suit." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 60, (1987). If EPA was really concerned with the public fisc, it would take advantage of the opportunity Congress gave it and comply with its mandatory duty at least during the 60 days following receiving a notice of intent to sue and thus incur not liability for Plaintiffs' attorneys' fees. Unfortunately, EPA almost never does this.

EPA goes on to argue that the imposition of market rates for Eastern District of Kentucky counsel is appropriate in this case to avoid a windfall. EPA Opp. at 2, 8-9. EPA does not tell us to whom it thinks this windfall would occur although it seems like EPA may believe the windfall would be to Plaintiffs' counsel. EPA's argument makes no sense in either option. As to Plaintiffs, as explained above, Davis was concerned with the rare case where plaintiff contracts for a rate that is much lower than what plaintiff would recover from the court and thus plaintiff would get a windfall via the difference between what is actually paid to plaintiff's counsel and what is recovered from defendants. Davis, 169 F.3d at 758. That concern has no applicability to the undisputed facts of this case which are Plaintiffs have paid nothing because they are being represented without charge.

If EPA's concern is a windfall to Plaintiffs' counsel, that concern finds no basis in Davis and runs counter to the well-established forum rate rule.   Moreover, that concern contradicts the undisputed fact in this case that Plaintiffs' counsel "ordinary command" the rates they are requesting in this case.   Id. See also  1st Ukeiley Decl. ¶ 23, 25 (Ukeiley firm charges and is paid the same rates in all of its non-*pro bono* cases as is requested in this case).   Recovery of one's ordinary rate is certainly not a windfall. However, recovery of significantly less than one's ordinary rate is effectively penalizing counsel for taking a public interest case on a *pro bono* basis.

EPA goes on to cite Palmer v. Rice, 2005 WL 1662130, at *20 (D.D.C. July 11, 2005) as further support.  See EPA Opp. at 4.  However, if anything Palmer supports Plaintiffs' position.  Palmer is a magistrate judge's report and recommendation.  In Palmer, one attorney, Wagner, was from Massachusetts.  Wagner charged $85 for her work on that case and her actual billing rate was $140.  Palmer, 2005 WL 1662130, at *5. The magistrate judge recommended that Wagner be compensated at "her normal market rate," that is $140 per hour.  Id. at *10.

In our case, the undisputed evidence is that the Ukeiley Firm's normal market rate are the rates they are seeking in this case.  Thus, following the holding in Palmer would lead to the conclusion that the Ukeiley Firm should be awarded the hourly rates they have requested.

EPA also cites to Avera v. Secretary of HHS, 75 Fed. Cl. 400, 405 (Fed. Cl. 2007) but the analysis is the same as in Palmer and Davis.  EPA Opp. at 4-5, n. 5.  In Avera, the plaintiffs' attorney from Wyoming originally requested $200 per hour.  He explained in a sworn affidavit that "the rates my firm has charged in this case [$200 per hour] are the

same as we charge all other clients for the nature of services rendered."  <u>Avera</u>, 75 Fed.

Cl. at 401.  However, subsequently, plaintiffs' attorney revised his request for  rates of

$574 - $598 based on the adjusted Laffey Matrix without any claim that that higher rates

were have he ordinarily commands.  <u>Id.</u> at 401-402.[1]  The court rejected this request and

paid the attorney based on what he normally charges.  <u>Id.</u> at 405.   That is exactly what

Plaintiffs are requesting in this case; to obtain a fee award based on the rate that

Plaintiffs' attorneys normally charge.  In any event, <u>Avera</u> is of no moment as the U.S.

Court of Federal Claims does not use the "forum rule" while the D.C. Circuit does.  <u>Id.</u> at

403.

> EPA goes on to argue that:
>
> Thus, under *Davis*, in order to establish entitlement to District of
> Columbia rates, Plaintiffs should have introduced evidence to show that
> the rates in the Eastern District of Kentucky are not substantially lower
> than District of Columbia rates.[7] Plaintiffs made no effort to meet this
> burden, despite the fact that there is clear evidence that the prevailing rates
> in counsel's home forum are substantially lower.
>
> [7] Plaintiffs concede that no work related to the case was performed in the
> District of Columbia, thereby obviating the need to analyze that prong of
> the *Davis* exception.

EPA Opp. at 6.  This argument is invalid in numerous ways.  To begin, as explained

above, <u>Davis</u> does not apply to the facts of this case in which the Plaintiffs will not

receive a windfall and there is no significant difference between the rates Plaintiffs'

attorneys normally command and the U.S. Attorney's Office Laffey Matrix rates.

Moreover, there is no rational reason to pick the Eastern District of Kentucky as the

controlling market.  It is undisputed that Plaintiffs' attorneys have never participated in a

---

[1] Plaintiff had actually lost in this case but the Vaccine Act allows recovery of fees even when the Plaintiff
loses.  The Court used this as one basis for rejecting the forum rule, which it explained applies in cases
where plaintiffs only recover if they prevail. <u>Id.</u> at 403.

case in that court so it is simply factually wrong to call it Plaintiffs' attorneys home

forum just as it would be wrong to call Maryland, Virginia or even West Virginia the

home forum of the many attorneys who practice in this Court but live in those states.

     The Eastern District of Kentucky is not even necessarily the closest court to

Berea, Kentucky where Plaintiffs' attorneys live.  For example, according to the web

page "mapquest.com" the Southern District of Ohio's Cincinnati Division is closer to

Berea, Kentucky than the Ashland and Pikeville Divisions of the Eastern District of

Kentucky.[2]  See 2nd Ukeiley Decl.  Choosing the Southern District of Ohio as the relevant

market to set rates does not make much sense but at least one can say that Plaintiffs'

attorney have practiced in that Court.  It is thus worth noting that Ukeiley's requested

rates of between $360 - $375 and Baldwin's requested rate of $205 are substantially

under the highest rate charged for Cincinnati partners and associates, according to the

national attorney rate survey Defense Counsel provided to Plaintiffs' counsel.  See 1st

Ukeiley Decl., Ex. A, page 5 of 12 (Cincinnati partner charging up to $435 per hour,

associates up to $280).

     EPA's argument also fails because to the extent EPA was correct that the Ukeiley

Firm's home forum was the Eastern District of Kentucky, then the Ukeiley Firm's actual

rates would be the best indication of what is a reasonable rate for highly specialized

Clean Air Act firms in that forum.  EPA cites to no cases regarding Clean Air Act

litigation in the Eastern District of Kentucky.  Since the Ukeiley Firm is seeking the rates

in this case that it normally commands, those rates are reasonable rates from Ukeiley's

home forum.

---

[2] The Lexington Division of the Eastern District of Kentucky is closer to Berea than is Cincinnati.

EPA claims that the attorneys' rates survey it provides does not contain any rates for Kentucky.  EPA Opp. at 7, n. 8.  This claim is incorrect.  The survey does include rates for firms in Louisville, Kentucky with rates that are higher than the rates the Ukeiley Firm is requesting for both a partner and associate.  See 1st Ukeiley Decl., Ex. A, page 12 of 12 (partners at $400 and associates at $235).[3]

Finally, Plaintiffs note that while EPA is correct that at the time of the preparation of Plaintiffs' opening brief, none of the work had been preformed in Washington, D.C., this reply brief was prepared in part in a hotel in Washington, D.C. and in part in Berkeley, California. 2nd Ukeiley Decl.   Plaintiffs offer this fact not to claim that the work done in Washington, D.C. should be based on Washington, D.C. rates and the work done in Berkeley should be based on Berkeley rates but rather to demonstrate that it would be arbitrary to chose the Eastern District of Kentucky as the home forum for attorneys that do not practice in that court and very rarely participate in proceeding in that state.

EPA goes on to argue that the Ukeiley Firm's actual rate charged to non-pro bono clients is not relevant because "a single fortunate case" cannot set the reasonable rate. EPA Opp. at 10.  Again, the facts in this case demonstrate that EPA's argument is wrong. To begin with, the undisputed facts are that Ukeiley Firm has charged rates that are the same as the U.S. Attorney's Laffey Matrix rates in 14 matters for a variety of clients. 1st Ukeiley Decl. ¶ 25.  14 is not one.  Moreover, these 14 matters represents 100% of the Ukeiley Firm's non-*pro bono* work: the rest of the firm's work was all done on a *pro bono* basis.  1st Ukeiley Decl. ¶ 34.  A 100% of the relevant data points if far cry from a single outlier.   The fact that the Ukeiley Firm does so much *pro bono* work cannot be the

---

[3] Louisville is in the Western District of Kentucky.

basis to reduce its rates.  See Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1524 (D.C.Cir.1988).

EPA argues that "If the choice of forum determines the rate to be paid for counsel, Plaintiffs can significantly increase the amount of attorneys' fees that can be recovered by filing in a high-cost market, such as the District of Columbia." EPA Opp. at 11.  That is the forum rule and EPA has no basis to ask the Court to overturn it.

Moreover, any implication that D.C. is not the appropriate and best forum for this case or any other Title V deadline suit case is completely misplaced.  As explained before, EPA has a pattern and practice of violating its mandatory 60-day deadline for responding to Title V petitions.  It is the EPA Administrator himself who makes the final decision on Title V petitions and signs the response.  2nd Ukeiley Decl.  In this case, EPA assigned personnel in D.C. to handle this matter.  Nichols Decl.  at para. 5-6.  EPA's illegal delays in responding to the Title V petitions in this case were caused by personnel at EPA headquarters in D.C. rather than in the Region.  Nichols Decl. at para. 3-4.  This case involved two petitions for facilities in two different states.  Neither one of these states contain any evidence relevant to this deadline suit.  Id.  In addition, the Department of Justice attorney litigating this case is in D.C.  Even if this case was filed outside of D.C., more than likely to be assigned to a D.C. based DOJ attorney.

**B.    DEFENDANT HAS FAILED TO SHOW THAT PLAINTIFFS' ARE REQUESTING AN UNREASONABLE NUMBER OF HOURS.**

EPA has provided no basis to reduce the hours in this case.  EPA asks for a reduction of 10% across the board because the documents in this case include items cut

and pasted out of other cases but EPA has absolutely no evidence that time in this case includes time actually spent drafting documents in other cases, which is not the case at all.  To begin with, EPA does not acknowledge that Plaintiffs have already reduced their hours by 15%.  Thus, it appears that EPA has already have gotten what it wanted.  Moreover, the minimal hours in this case is precisely because, in part, documents can be used from other cases but of course all documents need to be changed to reflect that facts of the current case.  Furthermore, EPA's argument makes absolutely no sense for it is asking for a 10% reduction across the board which would include a 10% reduction of things like specific telephone calls and e-mails with defense counsel and clients in this case.

### C.    PLAINTIFFS ARE REQUESTING ADDITION TIME FOR THIS REPLY BRIEF.

Plaintiffs request an additional 5.2 hours of Robert Ukeiley's time at $375 per hour and 3 hours of Liz Middleton's time at $120 per hour.  This reflects a 15% reduction in the actual time billed.  This comes to $2310.

### III.    CONCLUSION

Therefore, for the reasons stated above, Plaintiffs request a total of $11,540.10 in costs of litigation, including attorneys' fees in this case.

Respectfully submitted,

**/s/**_____

Robert Ukeiley
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1
Berea, KY 40403
T: (859) 986-5402
F: (866) 618-1017
E-mail: rukeiley@igc.org

Counsel for Plaintiffs

Dated: August 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROCKY MOUNTAIN CLEAN AIR )
ACTION, et al., )
 )
 )
         Plaintiffs, )
 )
         v. )          Civil Action No. 06-01992 (JR)
 )
STEPHEN L. JOHNSON, )
Administrator, United States )
Environmental Protection )
Agency )
 )
         Defendant. )
_____)

**DECLARATION OF JEREMY NICHOLS IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR  AWARD OF ATTORNEYS' FEES AND COSTS**

I, Jeremy Nichols, do declare and if called as a witness would testify as follows:

1.    I am the Executive Director of Rocky Mountain Clean Air Action, which

is a Plaintiff in this case.  I am also a Plaintiff in this case.

2.    I am submitting this declaration in support of Plaintiffs' motion for

reasonable attorneys' fees and costs for work conducted in the District Court.   I have

personal knowledge of the facts set forth herein and am competent to testify as to them if

called.

3.    After submitting my petition requesting the United States Environmental

Protection Agency (EPA) to object to the Ft. St. Vrain Title V permit, I had numerous

telephone and e-mail conversations with Hans Buenning, Sara Laumann, and others with

EPA Region 8.  It was made clear to me in these conversations that the delay in

1

responding to the Ft. St. Vrain Title V petition was caused by EPA headquarters personnel and not by Region 8 personnel and certainly not be anyone at the facility itself. There is no evidence relevant to this case at the facility itself.

4.      After submitting my petition requesting the United States Environmental Protection Agency (EPA) to object to the GCC Dacotah Title V permit, I had numerous telephone and e-mail conversations with Christopher Ajayi and Sara Laumann of EPA Region 8. It was made clear to me that the delay in responding to the GCC Dacotah Title V petition was caused by EPA headquarters personnel and not by Region 8 personnel and certainly not be anyone at the facility itself. There is no evidence relevant to this case at the facility itself.

5.      Attached as Exhibit A is EPA's response to my notice of intent to sue letter regarding EPA's failure to respond to my petition for an objection to the Ft. St. Vrain Title V permit. EPA's letter lists David Orlin as the person assigned to this matter. Mr. Orlin is a lawyer in EPA's Office of General Counsel in Washington, D.C.

6.      Attaches as Exhibit B is EPA's response to my notice of intent to sue letter regarding EPA's failure to respond to my petition for an objection to the GCC Dacotah Title V permit. EPA's letter lists Kevin Minoli as the person assigned to this matter. Mr. Minoli is a lawyer in EPA's Air and Radiation Law Office in Washington, D.C.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

2

8-3-07

_____

Date

_____

Jeremy Nichols



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C.  20460

OCT 21 2005

OFFICE OF
GENERAL COUNSEL

Jeremy Nichols
1536 Wynkoop, Suite B501
Denver, CO 80202

Dear Mr. Nichols:

I am writing in response to your letter dated October 11, 2005, in which you indicate that you intend to file a citizen suit against EPA under the Clean Air Act.  The letter alleges that EPA failed to perform a nondiscretionary duty by not granting or denying within 60 days your Petition asking the Administrator to object to the Title V Operating Permit for the Public Service Company's Ft. St. Vrain Station that was issued by the Colorado Department of Public Health and Environment, Air Pollution Control Division.

Your letter has been assigned Citizen Suit No. NCS-05-22.  Please use the file number in any future correspondence concerning this matter.  We would appreciate it if you would send this office copies of any correspondence or papers that you may ultimately file in this matter.  Please address such materials to the attention of Apple Chapman.

Sincerely,

David P.W. Orlin
Acting Assistant General Counsel
Air and Radiation Law Office



*Working to Protect Native Species and Their Habitats*

P.O. Box 1512, Laramie, WY 82073    (307) 742-7978  fax: 742-7989
Denver Office: 1536 Wynkoop, Suite B501   Denver, CO 80202  (303) 454-3370

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

March 21, 2006

Stephen Johnson, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

Re:    Notice of Intent to Sue For Failure to Respond to Title V Petition for
GCC Dacotah's Portland Cement Plant in Rapid City, South Dakota

Dear Administrator Johnson:

I am writing to provide you with notice that Biodiversity Conservation Alliance, Defenders of the Black Hills, Center for Native Ecosystems, Rocky Mountain Clean Air Action, Brian Brademeyer, Nancy Hilding, and Jeremy Nichols intend to sue you and the Environmental Protection Agency ("EPA") for your failure to respond within 60 days to the petition to object to GCC Dacotah's Portland Cement Plant Clean Air Act Title V Operating Permit, issued by the South Dakota Department of Environment and Natural Resources (hereafter "DENR"). The cement plant is located in Rapid City, South Dakota and affects air quality in the Black Hills region. We intend to bring a suit sixty days from the date of this letter, or shortly thereafter, under section 304 of the federal Clean Air Act, 42 U.S.C. § 7604, against you for your failure to perform a non-discretionary duty outlined in 42 U.S.C. § 7661d(b)(2). The suit will seek injunctive relief, declaratory relief, the cost of litigation, and potentially other relief.

Biodiversity Conservation Alliance is a Laramie, Wyoming based nonprofit organization dedicated to protecting and restoring ecological health and sustainability in the Black Hills region of western South Dakota. Members and supporters of Biodiversity Conservation Alliance depend upon clean air in the Black Hills region to ensure unimpaired visibility, healthy plant and animal communities, successful wildlife viewing, and enjoyable recreational experiences.

Defenders of the Black Hills is a nonprofit organization, without racial or tribal boundaries, whose mission is to ensure that the provisions of the Fort Laramie Treaties of 1851 and 1868 are upheld by the federal government of the United States. Defenders' actions seek to restore and protect the environment of the Black Hills to the best of their ability.

1

Rocky Mountain Clean Air Action is a newly founded, Denver, Colorado based citizens group dedicated to protecting clean air in Colorado and the surrounding Rocky Mountain region for the health and sustainability of local communities.

Center for Native Ecosystems is a Denver, Colorado based non-profit, science-based conservation organization dedicated to protecting and recovering native and naturally functioning ecosystems in the Greater Southern Rockies and Great Plains. Using the best available science, the Center for Native Ecosystems participates in policy and administrative processes, legal actions, and public outreach and education programs to protect and restore imperiled native plants and animals and the air, land, and water they depend upon.

Brian Brademeyer is a Rapid City, South Dakota resident who depends upon clean air for his health and happiness. Mr. Brademeyer enjoys hiking in the Black Hills and working on his home, located in Palmer Gulch in the Black Hills near Mt. Rushmore. Several years ago, Mr. Brademeyer underwent open heart surgery. Mr. Brademeyer now depends upon clean air to ensure pure oxygen, free of poisonous compounds, reaches his heart to help this sensitive organ regain its strength and stamina. Mr. Brademeyer also has a home in the Black Hills and enjoys viewing the peaks within the Black Elk Wilderness and Norbeck Wildlife Preserve. Clean air is essential to ensuring unimpaired views of these peaks.

Nancy Hilding is a Blackhawk, South Dakota resident who depends upon clean air for her health and happiness. Ms. Hilding suffers from asthma, which is exacerbated by air pollution, and is most happy when she can breathe clean, clear air. Ms. Hilding is also the President of Prairie Hills Audubon Society of Western South Dakota and in this capacity works to protect and restore the health and sustainability of the Black Hills ecosystem. In her capacity as President of Prairie Hills Audubon Society of Western South Dakota, Ms. Hilding takes great pleasure in educating others about the natural values of the Black Hills and depends upon clean air to carry out the educational goals of the organization.

Jeremy Nichols is a resident of Denver, Colorado, an avid bicycle rider, outdoor enthusiast, and regular visitor to Rapid City and the Black Hills of South Dakota who is deeply concerned about air quality in the Black Hills region and its effects on the health and welfare of people, plants, and animals. Mr. Nichols is also the founder of Rocky Mountain Clean Air Action and in this capacity works carry out the mission of the group to ensure protection of clean air for communities throughout the Rocky Mountains, including the Black Hills.

We are all adversely affected by EPA's failure to respond to our petition. Air quality in the Rapid City area is influenced to a large degree by GCC Dacotah's cement plant, which has the potential to emit thousands of tons of criteria air pollutants, including harmful particulates, into the air. Our interest in protecting the air we breathe, in protecting the health of the environment in the Black Hills, in recreating in and around the Black Hills, and in promoting healthy communities are adversely affected by EPA's failure to timely respond to our petition.

The DENR is the agency responsible for issuing Title V operating permits in South Dakota. The DENR issued a draft Title V operating permit for GCC Dacotah's cement plant and granted the public thirty days to comment on the draft permit. On September 21, 2005, we submitted comments to the DENR on GCC Dacotah's draft permit. Pursuant to 42 U.S.C. § 7661d(b)(2), we petitioned the Administrator of the EPA to object to GCC Dacotah's Title V Permit on January 12, 2006. Copies of this petition were also sent to the DENR and GCC Dacotah, as required by federal law. Our petition raised the following issues:

I.     The Permit Fails to Ensure Compliance with Best Available Control Technology Requirements

II.     The Permit Fails to Require Continuous Particulate Matter Monitoring or in the Alternative Fails to Require Sufficient Periodic Monitoring of Particulate Emissions

III.     The Permit Fails to Require Prompt Reporting of Permit Deviations

IV.     Problems With Other Permit Conditions Warranting Objection by the Administrator

The Clean Air Act, at 42 U.S.C. § 7661d(b)(2), provides that "the administrator shall grant or deny such petition within 60 days after the petition is filed." Responding to petitions pursuant to 42 U.S.C. § 7661d(b)(2) is a non-discretionary duty under the Clean Air Act. According to the green return receipt card we received from the EPA, the Administrator received our petition on January 18, 2006. Therefore, EPA had until March 19, 2006 to grant or deny the petition. EPA neither granted nor denied the petition by this date and/or by the date of this letter and therefore EPA is in violation of 42 U.S.C. § 7661d(b)(2). Administrator Johnson is responsible for the violation of this non-discretionary duty by not responding to the petition within 60 days.

In keeping with the requirements of federal regulations, you are hereby notified that the full name and addresses of the persons giving the notice are as follows:

Jeremy Nichols,
Biodiversity Conservation Alliance and
Rocky Mountain Clean Air Action
1536 Wynkoop, Suite B501
Denver, CO 80202

Charmaine Whiteface
Director
Defenders of the Black Hills
PO Box 2003
Rapid City, SD 57709

Jacob Smith
Executive Director

Center for Native Ecosystems
1536 Wynkoop, Suite 301
Denver, CO 80202

Nancy Hilding and
6300 West Elm
Blackhawk, SD 57718

Brian Brademeyer
Black Hills Regional Office
PO Box 2003
Rapid City, SD 57709

If you wish to discuss this matter, please contact me at the addresses indicated below.

Sincerely,

Jeremy Nichols
1536 Wynkoop, Suite B501
Denver, CO 80202
(303) 454-3370
jeremy@voiceforthewild.org

cc:    Regional Administrator, U.S. Environmental Protection Agency, Region 8;
       South Dakota Department of Environment and Natural Resources

4



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

APR 11 2006

OFFICE OF
GENERAL COUNSEL

Jeremy Nichols
1536 Wynkoop, Suite B501
Denver, CO 80202

Dear Mr. Nichols:

     I am writing in response to your letter dated March 21, 2006, in which you indicate that Biodiversity Conservation Alliance, Defenders of the Black Hills, Center for Native Ecosystems, Rocky Mountain Clean Air Action, Brian Brademeyer, Nancy Hilding and Jeremy Nichols intend to file a citizen suit against EPA under the Clean Air Act. Your letter alleges that EPA failed to perform a nondiscretionary duty by not granting or denying within 60 days the petition requesting that the Administrator object to the proposed Title V operating permit for the GCC Dacotah's Portland Cement Plant in Rapid City, South Dakota.

     Your letter has been assigned Citizen Suit No. NCS-06-03. Please use the file number in any future correspondence concerning this matter. We would appreciate it if you would send this office copies of any correspondence or papers that you may ultimately file in this matter. Please address such materials to the attention of David Orlin.

                    Sincerely,

                    Kevin S. Minoli
                    Acting Assistant General Counsel
                    Air and Radiation Law Office

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROCKY MOUNTAIN CLEAN AIR ACTION, <u>et al</u>., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-01992 (JR) |
| | ) | |
| STEPHEN L. JOHNSON, | ) | |
| Administrator, United States | ) | |
| Environmental Protection | ) | |
| Agency | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SECOND DECLARATION OF ROBERT UKEILEY IN SUPPORT OF**

**PLAINTIFFS' MOTION FOR  AWARD OF ATTORNEYS' FEES AND COSTS**

I, Robert Ukeiley, do declare and if called as a witness would testify as follows:

1.      According to the web page "mapquest.com"  the Southern District of Ohio's Cincinnati Division is closer to Berea, Kentucky than the Pikeville and Ashland Divisions of the Eastern District of Kentucky.[1]

2.      The reply brief was prepared in part in a hotel in Washington, D.C. and in part in Berkeley, California.

3.      It is the EPA Administrator himself who makes the final decision on Title V petitions and signs the response.

---

[1] The Lexington Division of the Eastern District of Kentucky is closer to Berea than is Cincinnati.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

/s Robert Ukeiley

__8/3/07_____          _____
Date                                                Robert Ukeiley